UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSEPH KINDER, individually, and on behalf of other members of the general public similarly situated,<br><br>                                Plaintiff,<br><br>v.<br><br>WOODBOLT DISTRIBUTION, LLC, a Delaware limited liability company,<br><br>                               Defendant. | Case No.:  3:18-CV-2713-DMS-AGS<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR ATTORNEYS' FEES, COSTS AND EXPENSES, AND INCENTIVE AWARD** |

Before the Court is Plaintiff's motion for attorneys' fees, costs and expenses, and incentive award.  Defendant Woodbolt Distribution, LLC ("Defendant" or "Woodbolt") filed a response to the motion, and Plaintiff filed a reply.  Defendant filed a response to the reply, to which Plaintiff objected.  For the following reasons, Plaintiff's motion is granted in part and denied in part.

**I.**

**BACKGROUND**

On November 21, 2018, Plaintiff sent a demand letter to Defendant alleging "a 13.8-ounce container of Cellucor C4 Pre-Workout powder ('C4 Pre-Workout') sold in an

opaque container significantly comprised of empty space." (ECF No. 52-5, at 2.) Shortly thereafter, on November 30, 2018, Plaintiff filed a Complaint in this Court alleging four causes of action arising under California law: (1) violation of the Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750, *et seq.*; (2) violation of the False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500 *et seq.*; (3) violation of the Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et seq.*; and (4) unjust enrichment. (ECF No. 1.) Plaintiff's allegations were based on Defendant's "misleading business practices with respect to the packaging and sale of Cellucor C4 Pre-Workout powders[.]" (*Id.* at 2.) He alleged that Defendant's packaging was misleading because each "container was significantly under-filled and contained a large amount of empty space rather than powder." (*Id.* at 3.) Plaintiff sought injunctive and declaratory relief, and attorneys' fees and costs. (*Id.* at 24.)

These allegations mirrored claims brought by Plaintiff in a previous case: *Lopez v. Woodbolt Distribution, LLC*, No. 2:18-cv-05963-JFW-KS, ECF No. 1 (C.D. Cal. July 9, 2018) (the "*Lopez* action"). There, Plaintiff's counsel sent a demand letter to Defendant on behalf of Gustavo Lopez, alleging that Lopez purchased a "container of Cellucor C4 Pre-Workout Powder ('C4 Pre-Workout') sold in an opaque container significantly comprised of empty space." (ECF No. 53-3, at 3.) On April 30, 2018, Plaintiff's counsel filed a complaint on behalf of Mr. Lopez in Los Angeles County Superior Court alleging Defendant's "misleading business practices with respect to the packaging and sale of the Cellucor C4 Pre-Workout powders[.]" (*See* ECF No. 52-2.) Upon removal to the United States District Court for the Central District of California, the *Lopez* action was voluntarily dismissed. (*See* ECF No. 22-6.)

After Plaintiff filed the Complaint in the present action, the parties filed four joint motions to extend time to respond to the Complaint "so as to allow the Parties additional time to discuss and engage in resolution of this action without concurrently increasing the costs of litigation." (ECF No. 4; *see also* ECF Nos. 9, 11, 16.) Defendant claims that it informed Plaintiff of deficiencies in his Complaint on numerous occasions, such as alleging

violations under the wrong statute. (ECF No. 52, at 10; ECF No. 22, at 3–4.) After attending an informal conference with the Court, Defendant filed a motion to dismiss the case. (ECF No 20.) Plaintiff filed an opposition. (ECF No. 21.) The Court granted Defendant's motion and granted Plaintiff leave to amend his complaint to plead his claims under the correct statute. (ECF No. 24.)

On July 12, 2019, Plaintiff filed his First Amended Complaint ("FAC"). (ECF No. 25.) Defendant filed another motion to dismiss. (ECF No. 28.) On December 10, 2019, the Court issued an order dismissing Plaintiff's claim for injunctive relief and allowing his other claims to proceed. (ECF No. 35.)

On January 6, 2020, Magistrate Judge Schopler issued an order setting a telephonic Early Neutral Evaluation ("ENE") and Case Management Conference for February 6, 2020, and requiring Plaintiff and a representative for Defendant to participate. (ECF No. 37.) Plaintiff did not appear at the ENE, telephonically or otherwise. (*See* ECF No. 51-2, at 4; *see also* ECF No. 53-1, at 2.) On February 20, 2020, Defendant filed a motion to certify for interlocutory appeal the Court's denial of Defendant's motion to dismiss. (ECF No. 43.) A week later, Magistrate Judge Schopler entered an order continuing the ENE to March 20, 2020. (ECF No. 44.) It appears the attorneys present for Plaintiff at that ENE initially lacked full settlement authority.[1] (*See* ECF No. 51-2, at 4.) The case resolved at the conference after counsel obtained necessary settlement authority. (*Id.*) In light of the

---

[1] At no point does Plaintiff contest the assertion that the attorneys representing him at the March ENE lacked settlement authority. Rather, Plaintiff's counsel asserts that "while Judge Schopler did ask Plaintiff's Counsel to confirm that they had authority to settle, Plaintiff's Counsel promptly confirmed." (ECF No. 53-1, at 3.) The Court does not construe this statement to be a denial of Defendant's allegation, as Plaintiff's counsel may have acted to secure full settlement authority *after* prompting by the Magistrate Judge. At no point in the briefing or in any declaration does Plaintiff's counsel affirmatively state that the attorneys present at the ENEs had *full* settlement authority during the *entirety* of the second ENE.

settlement, Defendant withdrew its motion for interlocutory appeal before Plaintiff filed an opposition. (*See* ECF No. 46.)

The settlement agreement provides that Defendant will add a "fill line" to its "Cellucor C4 Pre-Workout powders sold in 30- and 60-serving size containers" and pay Plaintiff's reasonable attorneys' fees, and costs and expenses as determined by the Court, as well as an incentive award. (*See* ECF No. 48, at 11; *see also* ECF No. 52, at 12.) Plaintiff thereafter filed the present motion. The matter has been fully briefed. As noted, Defendant also filed a sur-reply, and Plaintiff filed an objection to the sur-reply. (See ECF Nos. 54, 56.) Sur-replies are not permitted under the Local Rules, and Defendant did not request permission to file additional briefing. Accordingly, the Court declines to consider Defendant's unauthorized filing.

## II.
## DISCUSSION

A. Motion for Attorney's Fees

State law governs attorneys' fees in cases arising under diversity jurisdiction. *Riordan v. State Farm Mut. Auto. Ins. Co.*, 589 F.3d 999, 1004 (9th Cir. 2009) ("In a diversity case, the law of the state in which the district court sits determines whether a party is entitled to attorney fees, and the procedure for requesting an award of attorney fees is governed by federal law.") Where state law governs a claim, state law also governs the calculation of attorneys' fees. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002). However, the Court may still look to federal authority for guidance in awarding attorneys' fees. *See Apple Computer, Inc. v. Superior Court*, 126 Cal. App. 4th 1253, 1264 n.4 (2005) ("California courts may look to federal authority for guidance on matters involving class action procedures").

Under California law, the general rule is that each party bears their own fees. *See Essex Ins. Co. v. Five Star Dye House, Inc.*, 38 Cal. 4th 1252, 1257 (2006). In the present case, however, the parties' settlement agreement provides that Defendant shall pay Plaintiff

reasonable attorneys' fees, costs and expenses, and an incentive award. (*See* ECF No. 48, at 11; *see also* ECF No. 52, at 12.)

The parties agree that the lodestar method of calculating fees is appropriate in this case. A lodestar calculation is "based on careful compilation of the time spent and reasonable hourly compensation of each attorney." *Ketchum v. Moses*, 24 Cal. 4th 1122, 1131–32 (2001) (internal quotation marks and citations omitted). After determining the correct lodestar, a court may adjust the number upwards or downwards depending on factors including "(1) the novelty or difficulty of the questions involved, (2) the skill displayed in presenting them, (3) the extent to which the nature of the litigation precluded other employment by the attorneys, [and] (4) the contingent nature of the fee award." *Id.* at 1132. The initial lodestar figure also may be adjusted upward in contingency cases to compensate attorneys for the risk of taking a case in which they may not be compensated. *Id.* at 1132–33.

Here, while Defendant does not dispute that Plaintiff is entitled to fees under the settlement agreement, it challenges the reasonableness of the fees requested. Plaintiff submitted the following rates and hours to arrive at a lodestar calculation of $214,014.00 for 348 hours of work at hourly rates ranging from $345–775. (ECF No. 48-1, at 6.)

| Name | Position | Avg/Hour | Hours | Amount |
|---|---|---|---|---|
| Mark Ozzello | Partner | $775.00 | 14.4 | $11,160.00 |
| Robert Friedl | Associate | $745.00 | 157.8 | $117,561.00 |
| Steven Weinmann | Associate | $745.00 | 51.9 | $38,665.50 |
| Eduardo Santos | Associate | $545.00 | 16.2 | $8,829.00 |
| Cody Padgett | Associate | $420.00 | 8.1 | $3,402.00 |
| Trisha Monesi | Associate | $345.00 | 99.7 | $34,396.50 |

In addition, Plaintiff requests a lodestar enhancement multiplier of approximately 1.35, bringing the enhanced fee total to $290,000. (ECF No. 48, at 15.) Plaintiff's counsel's rates, hours billed, and lodestar multiplier are evaluated in turn.

/ / /

/ / /

1. Reasonable Hourly Rate

A reasonable hourly rate is the rate prevailing in the community for similar work. *See Gonzales v. City of Maywood*, 729 F.3d 1196, 1200 (9th Cir. 2013) ("[T]he court must compute the fee award using an hourly rate that is based on the prevailing market in the relevant community.") To determine what is reasonable, courts look to the prevailing market rates in the community served. *Schwarz v. Sec'y of Health & Human Servs.*, 73 F.3d 895, 908 (9th Cir. 1995). The prevailing market rate for attorneys of comparable experience, skill, and reputation controls this determination; however, "[t]hat a lawyer charges a particular hourly rate, and gets it, is evidence bearing on what the market rate is, because the lawyer and his clients are part of the market." *Carson v. Billings Police Dep't*, 470 F.3d 889, 892 (9th Cir. 2006). "If the party seeking attorneys' fees fails to meet its burden, the court may exercise discretion to determine reasonable hourly rates based on its experience and knowledge of prevailing rates in the community." *Arias v. Ford Motor Co.*, Case No. EDCV 18-1928 PSG (SPx), 2020 WL 1940843, at *3 (C.D. Cal. Jan. 27, 2020).

Here, Plaintiff's counsel seeks hourly rates ranging between $345 and $775. (*See* ECF No. 48-1, at 6.) To justify these rates, Plaintiff filed a supporting declaration from Raul Perez, a Capstone Law partner, providing decisions from California state courts and federal courts approving comparable fee awards for the firm's attorneys, including many of the same attorneys who litigated this case, and describing the professional experience of the attorneys who worked on the matter. (*See id.*, at 9–13, 19–29.) Plaintiff also provides declarations from Richard M. Pearl, an expert in California attorneys' fees, and William B. Rubenstein, a professor specializing in class actions, which analyze the rates of attorneys practicing in Southern California. (*See id.* at 59–133, 135.) Defendant does not contest the reasonableness of these rates. The Court therefore finds Plaintiff's attorneys' hourly rates to be reasonable.

2. Reasonable Hours Expended

An attorneys' fee award includes compensation for all hours reasonably expended on a matter, but "hours that are excessive, redundant, or otherwise unnecessary" should be

excluded. *Costa v. Comm'r of Soc. Sec. Admin*, 690 F.3d 1132, 1135 (9th Cir. 2012). Further, "absent circumstances rendering the award unjust, an attorney fee award should ordinarily include compensation for all the hours reasonably spent." *Ketchum*, 24 Cal. 4th at 1133 (citing *Serrano v. Unruh*, 32 Cal.3d 621, 625 (1982)). "[T]he standard is whether a reasonable attorney would have believed the work to be reasonably expended in pursuit of success at the point in time when the work was performed." *Moore v. Jas. H. Matthews & Co.*, 682 F.2d 830, 839 (9th Cir. 1982). However, the attorneys seeking the award bear the burden of presenting the appropriate fee documentation to the Court. *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1306 (9th Cir. 1994).

Plaintiff contends the fees requested are reasonable. (ECF No. 48, at 14–15.) Defendant disagrees, alleging multiple instances of excessive, redundant, and unnecessary billing. (ECF No. 52, at 13–20.) Each allegation of improper billing is addressed.

*First,* Defendant argues that time spent on preparing a demand letter and complaint was excessive because those documents were substantially recycled from the earlier filed *Lopez* litigation, which involved the same product. (ECF No. 52, at 13; ECF No. 52-2 (Entry Nos. 1–22).) In support of this argument, Defendant attaches copies of the letters from both cases and the *Lopez* complaint. (*See* ECF No. 52-3, 52-4, 52-5; *see also* ECF No. 1.) Defendant argues the Court should reduce Plaintiff's hours for these repeat-tasks from 27 to 2 hours. (ECF No. 53, at 13.)

Noting his counsel only spent 25.4 hours drafting the initial Complaint, FAC, and demand letter, and arguing that those documents are markedly different from those filed in *Lopez,* Plaintiff claims the time spent preparing the documents was reasonable. (ECF No. 53, at 7–9.) Plaintiff attaches a redline comparing the two complaints. (ECF No 53-1, at 5–29.) Plaintiff further argues that even if the pleading is found to be recycled, the work from the earlier proceeding in *Lopez* is still compensable because it was "both useful and necessary and directly contributed to the resolution of the [present] action." (ECF No. 53, at 8 (citing *Ramon v. County of Santa Clara*, 173 Cal. App. 4th 915, 924 (2009).)

The Court finds that a reduction of hours is warranted. Plaintiff's time entries numbered 1 through 22 are related to the research, drafting, and editing of the demand letter and complaint at issue. (*See* ECF No. 48-1, Ex. A (Entry Nos. 1–22).) These entries total 27 hours. While hours billed to collateral proceedings that are "closely related" and "useful" to a litigation may be compensated, *Children's Hosp. & Med. Ctr. v. Bonta*, 97 Cal. App. 4th 740, 779-80 (2002), not all of the hours Plaintiff submitted fall into that category. Billing entries 1 and 2 may be covered by this rule as they occurred before the *Lopez* complaint was filed, but entries 3 through 22 do not fall into that category. The Court finds the 4.6 hours billed in entries 1 and 2 are reasonable and compensable as related and useful work. However, the two demand letters are practically identical, aside from some minor changes to factual details. (*Compare* ECF No. 52-3, *with* ECF No. 52-5.) Yet, Plaintiff's counsel billed 3.7 hours for drafting the letter in this case. (*See* ECF No. 48-1, Ex. A (Entry Nos. 13–14, 16–17, 19).) That amount of time is not necessary to change names in an exemplar letter and set out the facts of Plaintiff's transaction. The Court therefore reduces this amount to 0.5 hours. The Complaint here is also substantially similar to the complaint filed in *Lopez*. Large portions of the complaints are identical, though Plaintiff's Complaint contains jurisdictional analysis and factual information not present in the *Lopez* complaint. (*See* ECF No. 53-1, at 7–10, 15–16.) The Complaint here also alleges an additional sub-class and an additional cause of action for unjust enrichment. (*See id.* at 20, 27–28.) Defendant asks the Court to reduce counsel's time for drafting the Complaint to 1.5 hours. (*See* ECF No. 52, at 13.) The Court finds the time requested for work on the Complaint to be excessive and reduces the compensable time for entries 3–12, 15, 18, and 20–22 from 18.7 to 8 hours. This adjustment results in a reduction from 27 hours to 13.1 compensable hours at a billing rate of $345.

*Second*, Defendant asserts that Plaintiff's request for compensation for 41.3 hours for propounding 24 discovery requests is excessive. (ECF No. 52, at 13–14.) Defendant argues the billing is doubly troubling because portions of it were billed by not one, but two experienced senior attorneys and it was block billed. Defendant urges the Court to reduce

the time to four hours total. Plaintiff argues that Defendant mischaracterizes the work product at issue. Plaintiff contends his counsel drafted: "(1) Plaintiff's discovery requests to Woodbolt, (2) Plaintiff's responses to Woodbolt's discovery requests (including time spent conferring with [Plaintiff] on the responses), (3) the discovery plan and ENE statement, and (4) the ESI protocols" during the time cited by Defendant. (ECF No. 53, at 9.)

The Court agrees with Plaintiff. The entries reflect time spent on activities other than drafting discovery requests. (*See* ECF No. 48-1, Ex. A (Entry Nos. 41-45, 124-25, 139, 143, 147, 150, 153, 158, 161, 163-64, 166, 169-171, 173.) Further, that senior attorneys worked on discovery is not, standing alone, inappropriate. Discovery is important, and from time-to-time it is appropriate that experienced attorneys work together to respond accurately and fully. Lastly, the Court was unable to locate instances of block billing among the cited time entries. "Block billing is the time-keeping method by which each lawyer and legal assistant enters the total daily time spent working on a case, rather than itemizing the time expended on specific tasks." *Welch v. Metro Life Ins. Co.*, 480 F.3d 942, 945 n. 2 (9th Cir. 2007) (quoting *Harolds Stores, Inc. v. Dillard Dep't Stores, Inc.*, 82 F.3d 1533, 1554 n. 15 (10th Cir. 1996) (internal quotation marks omitted)). The entries at issue reflect "time expended on specific tasks," rather than "the total daily time spent working on a case." *See Welch*, 480 F.3d at 945 n.2. Accordingly, the Court declines to reduce fees based on alleged block-billing and declines to reduce counsels' hours for work on discovery-related matters.

*Third*, Defendant argues that the 67.6 hours claimed for drafting a never-filed opposition to Defendant's motion for interlocutory appeal should be reduced. (ECF No. 52, at 14–16; ECF No. 52-2 (Entry Nos. 140–42, 144–146, 148–49, 151–52, 154–55, 159, 162, 165, 167, 177–78, 180, 185–86, 188, 191).) Defendant argues that the recoverable hours for this task should be reduced because the work was inefficient and duplicative. Defendant contends that because its motion was only 19 pages long, an attorney as experienced as Plaintiff's counsel "ought to be able to draft such an opposition, which

involved reviewing zero discovery, in far fewer hours." (*Id.* at 15 (citing *Lee-Tzu Lin v. Dignity Health-Methodist Hosp. of Sacramento*, S–14–0666 KJM CKD, 2014 WL 5698448, at *6-7 (E.D. Cal. Nov. 4, 2014) (reducing hours for inefficiency where an experienced attorney spent 44 hours on two motions)).) Defendant further argues that because multiple senior attorneys worked on the motion, the work is duplicative and subject to reduction. (*Id.* (citing *Lee-Tzu Lin,* 2014 WL 5698448, at *6–7 (reducing hours for duplication where multiple attorneys engaged work on a motion)).)

Plaintiff argues that the length of Defendant's motion is not an adequate indicator of the amount of time necessary to oppose it. (ECF No. 53 at 10–11 (citing *Inst. For Wildlife Prot. v. U.S. Fish & Wildlife Serv.*, No. 07-CV-358-PK, 2008 WL 4866063, at *12 (D. Or. Nov. 5, 2008) ("Defendants are overly blithe in suggesting that the reasonableness of [counsel]'s time expenditures can be determined by reference to the length of his brief")).) Plaintiff further argues that Defendant's own briefing acknowledges the complex issues underlying the motion. (*Id.* at 11 (citing ECF No. 43-1, at 11 (arguing that the Court should grant the motion because "[a] substantial ground for difference of opinion traditionally exists where [as here] novel and difficult questions of first impression are presented, on which fair-minded jurists might reach contradictory conclusions.")).) Finally, Plaintiff argues that his counsel's expenditure of time opposing the motion was reasonable in light of the stakes at issue. Had the motion been granted, Plaintiff's counsel would have spent many more hours addressing an appeal.

"[T]rial courts must carefully review attorney documentation of hours expended; 'padding' in the form of inefficient or duplicative efforts is not subject to compensation." *Ketchum v. Moses*, 24 Cal.4th at 1132. Having done so, the Court does not find any inefficiency or duplicative work on the part of Plaintiff's counsel. It was reasonable for counsel to involve multiple experienced lawyers to avoid further delays and an unfavorable outcome. *See Charlebois v. Angels Baseball LP*, 993 F. Supp. 2d 1109, 1125 (C.D. Cal 2012) (listing cases to show that "extensive authority supports awarding fees for time spent on unfiled motions"). A "reasonable attorney would have believed the work to be

reasonably expended in pursuit of success at the point in time when the work was performed." *Moore v. Jas. H. Matthews & Co.*, 682 F.2d 830, 839 (9th Cir. 1982). The Court therefore declines to reduce the hours devoted by Plaintiff's counsel to oppose Defendant's motion for interlocutory appeal.

*Fourth*, Defendant argues that Plaintiff's counsel spent too much time drafting oppositions to its motions to dismiss. Plaintiff's attorneys spent 49.6 hours on the first opposition and 46.8 hours on the second opposition. Defendant argues that, considering counsel's experience, the amount of time spent on these oppositions was unreasonable. (ECF No. 52, at 16–17.) Plaintiff argues that it would be inequitable to allow Defendant to "litigate tenaciously and then be heard to complain about the time necessarily spent by the plaintiff in response." (ECF No. 53, at 12 (quoting *Serrano v. Unruh*, 32 Cal.3d 621, 638 (1982)).) Plaintiff further argues that the Court "should defer to the winning lawyer's professional judgement as to how much time he is required to spend" litigating a case. (*Id.* (quoting *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008).) The Court finds the time devoted by Plaintiff's counsel to respond to Defendant's motions is reasonable and declines to reduce the fees.

*Fifth*, Defendant argues that the 2.1 hours Plaintiff's counsel spent to research and prepare a motion to appear telephonically should be reduced to 0.1 hours for inefficiency. (ECF No. 52, at 18; ECF No. 52-2 (Entry Nos. 68–69).) Facing a similar situation, defense counsel contends he simply called the Court to arrange for a telephonic appearance. (ECF No. 52-1, at 3.) Plaintiff does not address Defendant's argument on this point. The time spent here was not well invested. Accordingly, the Court reduces the time for this task to 0.5 hours.

*Sixth*, Defendant argues that Plaintiff's counsel should not be compensated for 8 hours drafting the FAC because the original complaint alleged violations under the wrong statute. (ECF No. 52, at 18; ECF No. 52-2 (Entry Nos. 76–80, 83–85).) Defendant points out that it informed Plaintiff's counsel about their citation to an incorrect statute on five occasions before Defendant filed its first motion to dismiss. Defendant further argues that

even if the Court finds the time to be compensable, it should award no more than 0.5 hours because the changes to the FAC were minimal. The Court finds Plaintiff's counsel's billing for this minor task, while compensable in part, is unreasonable. The Court reduces the recoverable time for work on the FAC to 0.5 hours at the rate of $345.

*Seventh*, Defendant argues that the 39.1 hours billed for the ENE conferences should be reduced on account of Plaintiff's alleged violations of the Court's order.[2] (*See* ECF No. 52-2 (Entry Nos. 86, 111, 116, 125, 127–28, 132–38, 157, 160, 179, 181, 184, 188–90, 192–93).) The Court's ENE order reads in relevant part: "All *parties* and lead attorneys must appear **in person** at the ENE. [. . .] In addition, **anyone else** needed to authorize full settlement must appear **in person**." (ECF No. 37, at 1–2 (bold emphasis original; italics and underlining added.) Defendant alleges Plaintiff did not attend the first ENE. Plaintiff does not contest that fact, but claims that while he was "not able to attend the first ENE in person due to an illness, he was in contact with Plaintiff's Counsel by phone." (ECF No. 53, at 12; see also ECF No. 53-1, at 2.) Plaintiff is a party and was not excused from attending the ENE. Defendant further alleges that the attorneys present for Plaintiff at the second ENE lacked full settlement authority, and that "Plaintiff has failed to provide any evidence to refute the reasonable inference from the continued ENE that the same counsel who appeared at initial ENE (Mr. Wienmann and Ms. Monesi) had no full settlement authority then either." (ECF No. 52, at 19; *see also* ECF No. 52-1, at 4.) Plaintiff does not explicitly contest this point, and instead challenges Defendant's ancillary assertion that the ENE was delayed by hours as a result of this lack of authority. (ECF No. 53 at 12–13; *see also* ECF No. 53-1, at 2–3.) Plaintiff also argues that the parties' failure to settle at the first

---

[2] Having reviewed the contested time entries, the Court finds that Defendant challenges 40.4 hours relating to the ENEs. The 39.1-hour figure seems to result from the fact that Defendant challenges 1.3 hours as both inefficient billing on discovery *and* as time related to the ENE that should be reduced due to violations of the Court's order. (*See* ECF No. 52-2, Ex. A (Entry No. 125).) Because the Court declines to reduce the number of hours Plaintiff's counsel spent on discovery, that entry will be evaluated here.

ENE was not due to Plaintiff's absence or any lack of settlement authority, but instead was caused by the parties' inability to agree on the terms of a settlement. (ECF No. 53, at 12–13; ECF No. 53-1, at 2.) Defendant argues that the claimed hours should be reduced by 80% percent for Plaintiff's repeated violation of the ENE order.

Plaintiff's repeated failure to comply with the Court's order justifies a reduction of the hours related to the ENE conferences. *See Owaidah v. Mazzei*, EDCV 18-246-KK, 2020 WL 2405277, at *6–8 (C.D. Cal. Apr. 9, 2020) (reducing a party's compensable hours to account in part for "counsel's repeated violation of Court orders"). Though Plaintiff argues that no settlement was reached at the first ENE because it regarded Defendant's offer as inadequate, Plaintiff's absence at the conference and his counsel's apparent lack of settlement authority put any settlement out of reach. This non-compliance necessitated a second ENE conference and wasted time. That counsel lacked full settlement authority for the entirety of the second conference also wasted time. Because Plaintiff and his counsel were solely responsible for their own non-compliance and the accompanying inefficiency, Plaintiff's counsel's 40.4 claimed hours will be reduced by 80%.

### 3. Lodestar Multiplier

Finally, Plaintiff argues that the Court should apply a lodestar multiplier of 1.35. (ECF No. 48 at 15–16.) To determine whether a lodestar multiplier should be awarded, courts consider, among other factors: "(1) the novelty and difficulty of the questions involved, and the skill displayed in presenting them; (2) the extent to which the nature of the litigation precluded other employment by the attorneys; (3) the contingent nature of the fee award[.]" *Serrano v. Priest*, 20 Cal. 3d 25, 49 (1977).

Plaintiff argues that the contingent nature of the case, the risk of delayed payment, and the success his counsel achieved by obtaining an injunction that addressed the heart of the issues at stake in the litigation renders a multiplier of 1.35 appropriate in this case. (ECF No. 48, at 15–18.) Plaintiff cites various cases where California courts have awarded multipliers (*Id.* at 15–16 (citing *e.g.*, *City of Oakland v. Oakland Raiders*, 203 Cal. App. 3d 78 (1988) (affirming a 2.34 multiplier for "extremely complex and notorious

litigation")).)  Defendant counters that the reduced lodestar amount already represents a reasonable fee.  (ECF No. 52, at 20–21 (citing *Forouzan v. BMW of N. Am.*, CV 17-3875-DMG (GJSx), 2019 WL 856395, at *7 (C.D. Cal. Jan. 11, 2019) (declining to apply a multiplier because "[t]he lodestar, with the . . . reduction for block-billed entries and other inefficiencies and the other individual reductions described above, reflects the reasonable amount of attorneys' fees Plaintiff should recover")).)  Defendant further argues that the contingent nature of the case alone does not warrant a multiplier, and that the risk of delayed payment was diminished by the fact that the lodestar is based on the present hourly rate and relatively short duration of the litigation.  (ECF No. 52, at 20–21.)  Finally, Defendant argues that its agreement to add a fill line does not constitute extraordinary success on the part of Plaintiff that justifies a multiplier.  (*Id.* at 22.)

      The Court declines Plaintiff's request to apply an upward multiplier.  The lodestar amount, minus the reductions described above, represents a reasonable fee.  The issues in the case were generally straightforward and the litigation was routine.  A 16-month delay of payment is relatively short, especially when charging current hourly rates.  While the case was taken on a contingency basis, this risk was largely offset by the structure of Plaintiff's counsel's contingency practice generally.  *See Forouzan*, 2019 WL 856395, at *7 ("[a]n attorney operating on a contingency-fee basis pools the risks presented by his various cases: cases that turn out to be successful pay for the time he gambled on those that did not. To award a contingency enhancement . . . would in effect pay for the attorney's time. . . in cases where his client does not prevail.") (quoting *City of Burlington v. Dague*, 505 U.S. 557, 565 (1992)).  Furthermore, "the risk to counsel for taking the case on contingency was reduced because of the possibility of recovering statutory fees" and there is "no evidence that the litigation precluded other work opportunities for counsel." *Aispuro v. Ford Motor Co.*, 18-CV-2045 DMS (KSC), 2020 WL 4582677, at *6 (S.D. Cal. Aug. 10, 2020).  Because these factors weigh in favor of Defendant, Plaintiff's request for a lodestar multiplier is denied.

/ / /

B. Litigation Costs

Plaintiff moves for $3,277.42 in litigation costs. While Defendant does not dispute that those costs are partially recoverable, it challenges two portions of that amount. First, Defendant disputes $1,832.51 of the costs because Plaintiff allegedly failed to provide invoices for that amount. Second, Defendant claims that $801.56 in travel expenses is unrecoverable. The Court declines to reduce these costs, and awards Plaintiff's counsel $3,277.42 for out-of-pocket expenses.

Civil Local Rule 54.1(a) provides that a "bill of costs . . . must be supported by . . . copies of the invoices for requested costs. L.R. 54.1(a). Defendant argues that because the costs represented by invoices in Exhibit 7 to Plaintiff's motion only total $1,444.91, the remaining claimed $1,832.51 is not recoverable. (ECF No. 52, at 22 (citing ECF No. 48-1, at 229–244).) However, not all costs require an external invoice. For example, copies produced in-house at a law firm would not create such invoices. In this context, the Court construes "invoices" broadly to include an itemized list of costs not likely to create discrete externally produced invoices. Plaintiff provides the Court with such a list. (See ECF No. 48-1, at 14–17.) The Court therefore finds Local Rule 54.1(a) to be satisfied and declines to reduce costs on the basis of a failure to provide invoices. Defendant also cites *Zuniga v. Western Apartments* for the proposition that travel expenses should not be awarded because "it was unnecessary [for Plaintiff] to retain a San [Francisco] attorney for a [San Diego] case." (ECF No. 52, at 23 (citing CV 13–04637–JFW (JCx), 2014 WL 6655997, at *4 (C.D. Cal. Nov. 24, 2014)).) However, the court in *Zuniga* did not deny awarding travel costs, it reduced them. This Court, by contrast, has awarded full costs for reasonable travel expenses. *See Shalaby v. Bernzomatic*, CV 13–04637–JFW (JCx), 2021 WL 120898, at *2 (S.D. Cal. 2021); *see also Carl Zeiss Vision Int'l GMBH v. Signet Armorlite, Inc.*, 07–cv–0894–DMS (POR), 2010 WL 1687788, at *2 (S.D. Cal. Apr. 26, 2010). The travel costs in this case are relatively minor and they fall in line with the costs of standard business travel. The Court finds these costs to be reasonable, and therefore awards them without reduction.

C. Incentive Award

"Incentive awards are designed to 'compensate class representatives for work done on behalf of the class[.]'" *Low v. Trump University, LLC*, 246 F.Supp.3d 1295, 1313 (S.D. Cal. 2017) (quoting *Rodriguez v. West Publ'g Corp.,* 563 F.3d 948, 958 (9th Cir. 2009)). Such awards are "'fairly typical in class action cases,' but are ultimately 'discretionary.'" *Id.* In the present case, the parties agree that a $7,500 award is appropriate. (*See* ECF No. 52, at 9; *see also* ECF No. 35, at 5.) The Court agrees and grants Plaintiff a $7,500 incentive award.

## III.

## CONCLUSION AND ORDER

After adjusting the hours expended and denying a lodestar multiplier, the Court orders payment of attorneys' fees to Plaintiff totaling $184,171.60, as follows:

| Name | Position | Hourly Rate | Claimed Hours | Adjusted Hours | Claimed Total | Adjusted Total |
|---|---|---|---|---|---|---|
| Mark Ozzello | Partner | $775.00 | 14.4 | 10.3 | $11,160.00 | $7,982.50 |
| Robert Friedl | Associate | $745.00 | 157.8 | 153 | $117,561.00 | $113,985.00 |
| Steven Weinmann | Associate | $745.00 | 51.9 | 34.86 | $38,665.50 | $25,970.70 |
| Eduardo Santos | Associate | $545.00 | 16.2 | 16.2 | $8,829.00 | $8,829.00 |
| Cody Padgett | Associate | $420.00 | 8.1 | 6.5 | $3,402.00 | $2,730.00 |
| Trisha Monesi | Associate | $345.00 | 99.7 | 71.52 | $34,396.50 | $24,674.40 |

In addition, Plaintiff is awarded costs and expenses totaling $3,277.42 and an incentive award of $7,500.

///

///

**IT IS SO ORDERED.**

Dated:  April 1, 2021

Hon. Dana M. Sabraw
United States Chief District Judge